**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Frances Weller,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-15-02444-PHX-JZB<br><br>**ORDER** |

Plaintiff Mary Frances Weller seeks review of the Social Security Administration Commissioner's decision denying her application for disability and disability insurance benefits under the Social Security Act. (Doc. 1; Doc. 15.) For the reasons below, the Court will affirm the Commissioner's decision.

**I.  Background**

On September 27, 2012, Plaintiff filed an application for disability and disability insurance benefits. (AR[1] 151–52.) Plaintiff alleged that she became unable to work on June 1, 2011. (*Id.* at 151.) Plaintiff alleged disability based on a variety of conditions, including degenerative disc disease, three bulging back discs, numbness and tingling in arms, loss of circulation in lower extremities, severe bone pain, hypertrophic cardio myopathy, liver tumors, chronic sinus infections, chronic fatigue, and carpel tunnel syndrome. (*Id.* at 65–66.) Plaintiff's application was initially denied on January 23,

---

[1] Citations to "AR" are to the administrative record.

2013, and denied upon reconsideration on August 13, 2013. (*Id.* at 91–93, 95–97.)

Pursuant to Plaintiff's request, a hearing was held on January 10, 2014, before Administrative Law Judge Patricia A. Bucci (ALJ). (*Id.* at 46–63.) In a decision dated March 26, 2014, the ALJ ruled Plaintiff is not entitled to disability benefits because she is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 35.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1–4.)

Having exhausted the administrative review process, on December 1, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On June 6, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 15.) On July 6, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 16.) On July 20, 2016, Plaintiff filed a Reply Brief. (Doc. 17.)

**II.  Legal Standards**

    **a.  Standard of Review**

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that

which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. §

> 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)–(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (AR at 23–35.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of the disability. (*Id.* at 25.) At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, coronary artery disease status post stent, stage two chronic kidney disease, myofascial pain syndrome, Lyme disease, chronic fatigue, venous insufficiency, and lumbar degenerative disc disease. (*Id.*)[2] At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 27–28.)

At step four, the ALJ found the following:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can only frequently balance, but can occasionally climb, stoop, crouch, kneel, and crawl. [Plaintiff] will need to avoid concentrated exposure to non-weather related extreme cold and/or extreme heat. In addition, [Plaintiff] must avoid dangerous machinery with moving mechanical parts and unprotected heights that are high or exposed.

(*Id.* at 28.)

---

[2] As stated below, giving Plaintiff the benefit of the doubt, the ALJ also found Plaintiff suffered from the severe impairment of fibromyalgia. (*Id.* at 31.)

- 4 -

The ALJ further found that Plaintiff is able to perform her past relevant work as an office manager and accounting clerk. (*Id.* at 35.) Given that finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from . . . [the alleged date of disability] through the date of this decision." (*Id.* at 35.)

## III. Analysis

Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ erred in weighing medical source evidence; and (2) the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. The Court addresses each argument below.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ erred in weighing the opinions of the following treating medical professionals: (1) Colette Toronto, N.P.; (2) Dr. Tiffany Nunnelley; and (3) Dr. Seth Oesch. Below, the Court addresses the ALJ's treatment of these opinions.

#### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)–(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

- 5 -

interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam).  But "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421–22.  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

### ii. The ALJ did not err in giving minimal weight to the opinions of treating sources, NP Toronto, Dr. Nunnelley, and Dr. Oesch.

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Plaintiff's treating sources Colette Toronto, N.P., Dr. Tiffany Nunnelley, and Dr. Seth Oesch, who worked together as a treatment team at the VHS Clinic. (Doc. 15 at 4, 13–22.)

NP Toronto began treating Plaintiff in April 2010 for several conditions, including hypertension; headache; acute sinusitis; polycystic ovaries; unspecified mastoiditis; allergic rhinitis; dizziness and giddiness; anxiety; persistent disorder of initiating or maintaining sleep; hyperlipidemia; tobacco use disorder; and pain in the lower leg joint. (AR 340.)  During the period of April 2010 through October 2012, Plaintiff visited the VHS Clinic for evaluation of several additional symptoms including: hypercalcemia; leukocytosis; chronic pain; polyp of nasal cavity; knee pain; pain in joint, multiple sites; degeneration of thoracic or lumbar intervertebral disc; degeneration of lumbosacral intervertebral disc; lumbago; anomalies of gallbladder, bile ducts, and liver; malaise and fatigue; edema; and nonspecific abnormal results of function studies of the liver. (*Id.* at 294–340.)

On October 11, 2012, NP Toronto completed, and Dr. Nunnelley signed off on, a Medical Assessment of Ability to Do Work-Related Physical Activities form.  (*Id.* at 347–49.)  NP Toronto opined that: (1) Plaintiff can continuously sit for a single period of 45 minutes; (2) Plaintiff can sit for less than one hour in an eight-hour work day; (3) Plaintiff can continuously stand/walk for a single period of 20-30 minutes; (4) Plaintiff

can stand/walk for less than one hour in an eight-hour work day; (5) Plaintiff can occasionally lift and carry up to 10 pounds; (6) Plaintiff can never lift or carry more than 10 pounds; (7) Plaintiff can occasionally reach, but never stoop, squat, crawl, or climb; (8) Plaintiff has moderately severe limitations[3] of pain and fatigue; (9) Plaintiff could occasionally use her hands for grasping, pushing/pulling of controls, and fine manipulation; and (10) Plaintiff has moderate restriction in exposure to dust, gas, and fumes. (*Id.*)

On October 11, 2012, NP Toronto also completed, and Dr. Nunnelley signed off on, a Headache Questionnaire for the Treating Physician form. (*Id.* at 190.) NP Toronto indicated that: (1) Plaintiff has sinus headaches of varying average durations and varying monthly occurrences; (2) Plaintiff's average pain level during these headaches was seven on a scale of one to ten; (3) Plaintiff's headaches interfered with her concentration, attention, memory and capacity to work; and (4) Plaintiff's headaches would result in an average of three to four absences from work per month. (*Id.*)

On November 6, 2013, NP Toronto completed, and Dr. Oesch signed off on, an updated Medical Assessment of Ability to Do Work-Related Physical Activities form. (*Id.* at 613–15.) The information on the form was largely identical to the previously completed form (*id.* at 347–49), with the following notable differences: (1) Plaintiff can now sit for less than two hours instead of less than one hour in an eight-hour work day; (2) Plaintiff can now continuously stand/walk for a single period of 10 minutes instead of 20-30 minutes; (3) Plaintiff can now never lift more than 5 pounds instead of the previous 10 pounds; (4) whereas previously there were no additional details given, the second form lists the causes of Plaintiff's limitations as fibromyalgia, lumbar degenerative disk disease, heart disease, gastroesophageal reflux disease (GERD), thyroid, liver tremors, and chronic sinus infections; and (5) Plaintiff is now totally restricted in exposure to dust, gas, and fumes. (*Id.*)

---

[3] The form used by NP Toronto defines "moderate" as "[a]n impairment which reduces ability to function (10% off task)," and "moderately severe" as "[a]n impairment which severely affects ability to function (11-15% off task)." (*Id.* at 349.)

NP Toronto's opinions, as signed off on by Dr. Nunnelley and Dr. Oesch, were contradicted by the opinions of agency, non-examining physicians, Dr. Valeria Malak and Dr. Terry Ostrowski. (*Id.* at 65–74, 76–88.) On January 14, 2013, state agency physician Dr. Malak completed a Physical Residual Functional Capacity Assessment based on her review of the record as part of the initial disability determination. (*Id.* at 70-72.) Dr. Malak opined that Plaintiff can stand, sit, and/or walk with normal breaks for about six hours in an eight-hour workday (*id.* at 71), which contradicts NP Toronto's assessment that Plaintiff can only stand for 10 minutes and can only sit for two hours (*id.* at 347-49). Dr. Malak further opined that Plaintiff could occasionally climb ramps and stairs; climb ladders, ropes, and scaffolds; balance; bend at the waist; kneel; crouch; and crawl (*id.* at 70-72), which contradicts NP Toronto's opinion that Plaintiff can occasionally reach, but never stop, squat, crawl, or climb (*id.* at 347-49). On August 13, 2013, state agency physician Dr. Terry Ostrowski completed a Physical Residual Functional Capacity Assessment based on his review of the record as part of the reconsideration level of the disability determination. (*Id.* at 84-86.) Dr. Ostrowski's assessment echoed that of Dr. Malak except that Dr. Ostrowski opined Plaintiff can stand and/or walk with normal breaks for only four hours instead of six hours in an eight-hour workday. (*Id.* at 85.)

Plaintiff first argues that the "clear and convincing reasons" standard should apply when weighing the opinions of the treating sources because those opinions are not contradicted by other substantial evidence. (Doc. 15 at 13–14.) In Plaintiff's view, the contradicting opinions of the non-examining physicians are not substantial evidence because they are not based on a review of the record as a whole. (Doc. 15 at 11 n.14.)

The Court rejects Plaintiff's argument that the clear and convincing standard should apply in reviewing the ALJ's treatment of the VHS treating physicians' opinions. First, the Court finds that the ALJ's treatment of Dr. Malak's and Dr. Ostrowski's opinions is supported by substantial evidence. The ALJ gave more weight to these opinions, to the extent they are consistent with the assessed RFC, because the ALJ found

the opinions well supported by objective diagnostic testing, the physicians' trained observations, and their impartial analysis of the evidence of record. (AR 34.) Both Dr. Malak's and Dr. Ostrowski's assessments reasonably cite to and consider extensive evidence in the record, including evidence that is favorable to Plaintiff's alleged work limitations. For example, both assessments consider reports noting that Plaintiff has "constant p[a]in in bones, lower back, HAs, muscle aches, fatigue, memory lapses, can stand/walk 5-10 min. sit 20 min." (*Id.*) Both assessments also analyze objective evidence, such as MRI scans of the spine, echocardiograms, blood pressure testing, physical examination notes, and a list of medications and procedures administered. (*Id.* at 72, 83.) For example, Dr. Ostowski's report cites to medical records from pain specialists, cardiovascular specialists, kidney disease specialists, multiple hospital visits and multiple treating specialists and quotes specific findings from those reports. (*Id.* at 78-81.) Additionally, the non-examining physicians took into account less objective evidence that nevertheless is favorable to Plaintiff, such as her functional report and a report from the Pain Center of AZ, which describes "focal tenderness . . . ROM [range of motion] limited w[ith] pain." (*Id.* at 79-80.) Further, as discussed below, the ALJ extensively discussed the treatment record and other medical evidence in the record that supports the ALJ's RFC finding, which in large part mirrors the limitations opined by the non-examining sources.

Second, Plaintiff's reading of case law to imply that a non-examining physician's opinion is for the most part insubstantial evidence that cannot contradict a treating physician's opinions is not supported by relevant case law. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."). Accordingly, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for assigning minimal weight the opinions of the treating providers at the VHS Clinic.

1    The ALJ gave the treating sources minimal weight for the following reasons: (1) the limitations opined contradict and are unsupported by Plaintiff's treatment records; (2) these providers are primary care providers rather than specialists; (3) the opinions are "conclusory with little explanation"; (3) the opinions are based on Plaintiff's subjective complaints, which the providers "uncritically" accepted as true, based on their sympathy for Plaintiff; and (4) the opinions are on a check box form that "could have been filled out by anyone." (AR at 34.)

The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for giving minimal weight to Dr. Oesch, Dr. Nunnelley, and NP Toronto's opinions. First, the ALJ gave the treating physicians' opinions minimal weight because the treatment records do not support the extreme limitations opined. (*Id.* at 34.) "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount treating physician opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

The medical records discussed and cited to by the ALJ support this finding. For example, the treating records repeatedly state that Plaintiff could ambulate normally, was not in distress, had good insight and judgment, and had normal tone, strength, and movement throughout all of her extremities without edema. (*See, e.g.*, *id.* at 304, 307, 311, 314–15, 317–18, 329, 338–39, 341, 623–24, 641–42, 645–46.) As the ALJ noted, Plaintiff also reported in follow up visits her fatigue had improved and no sleep disturbance. (*Id.* at 618–19, 627.) Further, with regard to the limitation that Plaintiff cannot perform fine manipulative activities, as the ALJ notes, there is not support for this limitation in the treatment records. Aside from minimal references to swelling in her hands (*id.* at 306, 321, 634–25), the records state numerous times that Plaintiff has normal movement of all extremities and no edema. And, as the ALJ noted, Plaintiff

never reported to her treating physicians that she suffers from fatigue so severe that she must take two to three naps a day. Therefore, ALJ properly found that Plaintiff's limitations are not supported by the treatment records.

Additionally, the ALJ concluded that if Plaintiff suffered from such extreme limitations, the ALJ would expect to see reports of atrophy or weakness in the treatment records; however, the treatment records show normal muscle strength and tone. (AR 34.) As the Ninth Circuit has held, opinions that are so extreme as to be implausible are properly rejected. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).[4]

Likewise, the ALJ concluded that the statements of the VHS Clinic physicians were "conclusory with little explanation for the restrictions." (AR at 34); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may permissibly reject a treating physician's opinions on a check-box form that is lacking in explanation either on the form or in the treatment notes). Notably, Plaintiff failed to point to any specific treatment records that support these limitations, but instead asserts that the "assessments were based upon not only [the VHS Clinic physicians'] treating experience, but also information from other specialists to whom [Plaintiff] was referred." (Doc. 15 at 21.) However, the overall findings of Plaintiff's treating specialists do not support the opinions of VHS Clinic treating physicians. For example, Dr. Kuppusamy, a pain specialist and treating source, during a March 13, 2013 examination, noted that Plaintiff could participate in an exercise program and should continue with her ongoing home exercise program. (AR at 494–96.) Similarly, during a May 10, 2013 appointment with Dr. Kuppusamy, Plaintiff reported that she was "doing well" and Plaintiff was once again cleared to continue with her ongoing home exercise program. (*Id.* at 487.) The ALJ also cited to findings by Dr. Mehta, a treating cardiologist, that Plaintiff had mild to no edema. (*Id.* at 557, 561, 573, 577, 685.) Likewise, Dr. Smith, a vascular surgeon, found

---

[4] The treatment records do document Plaintiff suffered from headaches. However, Plaintiff testified at the hearing that her headaches had improved and she now gets them only "occasionally," which she stated was "once every two or three months," and they usually last "three or four days." (AR 57.)

- 11 -

neck, respiratory, peripheral vascular exam, cardiovascular exam, pedal pulses, abdomen, and musculoskeletal exams were all normal. (*Id.* at 681.) Overall, the ALJ relied on substantial evidence in the record to discount the opinions of the VHS Clinic employees as unsupported and conclusory.

Further, the ALJ gave minimal weight to the treating sources at the VHS Clinic because those sources are not specialists. (AR 34.) Plaintiff claims that such a distinction between a specialist and non-specialist contradicts the current convention of assessing medical opinions, which only distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester*, 81 F.3d at 830. However, the ALJ may consider as a factor in weighing treating source opinions whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(5).

And, importantly, in this case, the clinical findings of other treating specialists do not support the opinions of the VHS Clinic treating physicians. As stated above, the ALJ cited to and discussed medical records from Dr. Kuppusamy, a treating pain specialist, who repeatedly noted that Plaintiff was cleared to engage in a home physical exercise program. (AR at 487, 494–96.) Similarly, the ALJ cited to evidence from Dr. Mehta, a cardiologist and a treating source, who reviewed Plaintiff's Vascular Lab Testing results and noted that Plaintiff complained of fatigue, but nevertheless enrolled and encouraged Plaintiff to attend cardiac rehab sessions regularly. (*Id.* at 683–85.) Furthermore, the ALJ relied on findings by Dr. Smith, a vascular surgeon, noting that Plaintiff had mild symptoms of venous disease, but advising Plaintiff to continue treating her symptoms with compression stockings as more aggressive treatments were unnecessary. (*Id.* at 679–82.) Based on this record evidence, the Court finds the ALJ's conclusion regarding the VHS Clinic physicians' opinions is supported by substantial evidence.

In her Reply, Plaintiff does not dispute that many of the VHS Clinic's treatment records indicate normal movement and muscle tone of Plaintiff's extremities. (Doc. 17.) Rather, Plaintiff argues that even if a plaintiff had normal strength, gait, and movement, the ALJ ignored the impact of the fatigue and pain that are associated with Plaintiff's

fibromyalgia. (Doc. 17 at 6.)

SSR 12-2P, 2012 WL 3104869, provides that Defendant will find a claimant has fibromyalgia if: (1) the claimant had a history of widespread pain throughout the body for at least three months and at least 11 positive tender points, or (2) the claimant has a history of widespread pain and "[r]epeated manifestations of six or more FM symptoms, signs,[] or co-occurring conditions,[] especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed,[] depression, anxiety disorder, or irritable bowel syndrome."

The ALJ noted that the record does contain complaints from Plaintiff regarding "whole body pain," and that her treating physicians have suggested a diagnosis of fibromyalgia. (AR 31.) However, the ALJ also noted that there are not any examination records that show at least 11 tender points or that Plaintiff was ever diagnosed or treated by a rheumatologist. (*Id.*) Therefore, the ALJ gave Plaintiff the benefit of the doubt in finding that her fibromyalgia was a severe impairment. Further, as detailed above, the ALJ thoroughly discussed the treatment records and Plaintiff's allegations of fatigue and pain. The ALJ cited to treatment records stating Plaintiff's fatigue had improved, and Plaintiff denied sleep disturbance. (*Id.* at 29, 618, 624, 627; *see also* AR 296, 303–04, 311, 333, 336.) Further, the ALJ cited to and discussed treatment records from Plaintiff's pain specialist repeatedly stating that Plaintiff was doing well, her medications and treatment were providing her with adequate pain relief, she was functional, and she denied any side effects from her medications. (*Id.* 30–31, 443–44, 487–88.) Plaintiff fails to cite to any treatment record that supports her argument that pain and fatigue caused by her fibromyalgia were disabling.

The Court finds that the ALJ's remaining reasons for giving minimal weight to the treating physicians' opinions—that the treating physicians uncritically accepted Plaintiff's subjective reports as true because they had sympathy for Plaintiff, and the check-box form used "could have been filled out by anyone"—are not supported by substantial evidence. (*Id.* at 34.) Although it's possible the ALJ inferred from the

treating records that the treating physicians relied on Plaintiff's subjective complaints, the ALJ does not explicitly make that finding. Further, the ALJ fails to cite to any evidence in the record to support a conclusion that someone other than NP Toronto and/or the VHS physicians signed the opinions. Therefore, the Court does not find these reasons are supported by substantial evidence.

However, as detailed above, the ALJ gave other sufficient reasons for giving the VHS Clinic treating physicians' opinions minimal weight. Therefore, the Court finds that any error with regard to the reasons provided by the ALJ is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.") (quoting *Carmickle v. Comm'r*, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)); *Howell v. Comm'r So. Sec. Admin.*, 349 Fed. Appx. 181, 184 (9th Cir. 2009) (stating that "[a]n ALJ ought not dismiss a treating physician's testimony merely because it was contained on [a check off] form" but finding any error in doing so harmless because ALJ had "enough evidence" to reject the physician's testimony).

Overall, the ALJ provided sufficient specific and legitimate reasons supported by substantial evidence for assigning minimal weight to the opinions of the VHS Clinic treating providers. Therefore, the Court finds that the ALJ's treatment of these opinions is free of harmful error and supported by substantial evidence.

### b. Plaintiff's Symptom Testimony

#### i. Legal Standard

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's symptom testimony. (Doc. 15 at 22–24.) An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014–15 (citing *Lingenfelter*, 504 F.3d at 1035–36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947

1   F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant is not required to show objective
2   medical evidence of the pain itself or of a causal relationship between the impairment and
3   the symptom.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the
4   claimant must only show that an objectively verifiable impairment "could reasonably be
5   expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d
6   at 1282); *see also Carmickle*, 533 F.3d at 1160–61 ("requiring that the medical
7   impairment 'could reasonably be expected to produce' pain or another symptom . . .
8   requires only that the causal relationship be a reasonable inference, not a medically
9   proven phenomenon").

10   Second, if a claimant shows that she suffers from an underlying medical
11   impairment that could reasonably be expected to produce her pain or other symptoms, the
12   ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how
13   the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. §
14   404.1529(c)(1).  In making this evaluation, the ALJ may consider the objective medical
15   evidence, the claimant's daily activities, the location, duration, frequency, and intensity
16   of the claimant's pain or other symptoms, precipitating and aggravating factors,
17   medication taken, and treatments for relief of pain or other symptoms.  *See* 20 C.F.R. §
18   404.1529(c); *Bunnell*, 947 F.2d at 346.

19   At this second step, the ALJ may reject a claimant's testimony regarding the
20   severity of his or her symptoms only if the ALJ "makes a finding of malingering based on
21   affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883),
22   or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible.
23   *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036).  "'The clear and
24   convincing standard is the most demanding required in Social Security Cases.'"
25   *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th
26   Cir. 2002)).

27   Here, the ALJ first found that Plaintiff's medically determinable impairments
28   could reasonably be expected to cause the alleged symptoms.  (AR 29.)  The ALJ then

- 15 -

found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. (*Id.*) because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

### ii. The ALJ did not err in discounting Plaintiff's testimony.

At the hearing, Plaintiff testified that she cannot work because of chronic fatigue, which forces her to lie down two to three times per day to try to nap. (*Id.* at 50.) She also testified that she suffers from bone pain in her lower back and legs that is only improved with rest, which has caused her to become very sedentary. (*Id.* at 50–52.) At the same time, Plaintiff testified that she cannot sit for more than 10 to 15 minutes before being forced to get up and walk around for two to five minutes because of lower back pain and numbness in her arms. (*Id.* at 51.) This inability to sit due to pain is why Plaintiff claims she cannot do sedentary work. (*Id.*) In addition to lower back and leg pain, Plaintiff also claimed that she experiences constant pain in her hands and arms that is severe without medication and moderate with medication. (*Id.* at 52–53.)

Addressing her daily activities, Plaintiff stated that she is able to do some laundry and cleaning, but would have to stop to rest every 15 minutes for about 30 minutes to an hour. (*Id.* at 54–55.) Plaintiff was also unable to walk or stand for more than 10 minutes at a time or to lift anything heavier than a gallon of milk. (*Id.* at 55.) While Plaintiff conceded that she can do some fine manipulation such as buttoning clothes, she claimed that she cannot do such tasks repetitively because her fingers would become numb. (*Id.* at 56.) Plaintiff also claimed to have multiple side effects from her medication including excessive sweating, nausea, digestive issues, constipation, drowsiness, and vertigo. (*Id.* at 58.)

The ALJ found Plaintiff's testimony regarding the severity of her symptoms not entirely credible because the testimony is: (1) inconsistent with and unsupported by the medical evidence in the record; (2) inconsistent with Plaintiff's treatment history; (3) inconsistent with Plaintiff's statements; and (4) inconsistent with Plaintiff's daily

activities and her statements regarding those activities. (*Id.* at 29–33.)

The Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. In addressing Plaintiff's testimony that she suffers from disabling, constant lower back and leg pain, the ALJ cited to objective evidence in the record, which contradicts Plaintiff's statements, including MRI scans revealed only mild degenerative changes of the uncovertebral joints and facet joints without significant encroachment of the central spinal canal. (*Id.* at 30, 351.) Similarly, the ALJ found that there was no objective medical evidence to corroborate Plaintiff's testimony that she drops objects as she had never reported such symptoms to her doctors. (*Id.* at 31.) Even further, several of Plaintiff's treatment records report that Plaintiff had normal movement in all of her extremities and no edema. (*See, e.g., id.* at 314–15, 623–24, 627–28.) In addressing the MRI scans, Plaintiff claims that the benign MRI scans only rule out one possible cause of her lower back pain (Doc. 15 at 23). However, the ALJ properly considered this lack of objective medical evidence as "a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857.

The ALJ also addressed Plaintiff's complaint of "whole body pain" caused by fibromyalgia. (AR at 31.) Although the ALJ asserted that Plaintiff lacked the symptom of tender points associated with fibromyalgia, the ALJ ultimately "g[ave] the claimant the benefit of the doubt in finding fibromyalgia as a severe medically determinable impairment in this case . . . ." (*Id.*) As the ALJ notes, there is no evidence in the record of any tender points or treatment of Plaintiff by a rheumatologist. And, the ALJ cited to treatment records regarding improved fatigue and Plaintiff's statements regarding her pain being manageable with treatment. Therefore, the Court finds the ALJ's treatment of Plaintiff's fibromyalgia to be supported by substantial evidence.

The ALJ also examined Plaintiff's treatment history and concluded that it "has been conservative and routine, which tends to suggest her impairments are not as severe as alleged." (*Id.* at 31.) As previously described, Plaintiff was evaluated by Dr. Mehta,

- 17 -

who enrolled Plaintiff in a cardiac rehab program.  (*Id.* at 683-85.)  Furthermore, Dr. Smith advised Plaintiff to continue treating her symptoms of venous disease with compression stockings as more aggressive treatments were unnecessary.  (*Id.* at 679–82.)  Such routine treatments "are not the sort of description and recommendations one would expect to accompany a finding that [Plaintiff] was totally disabled under the Act." *See Rollins*, 261 F.3d at 856.

Additionally, the ALJ found that Plaintiff's medications allowed her to function, which contradicted her testimony that nothing relieved her pain. (AR at 31.)  The ALJ properly concluded that Plaintiff's impairments are not as severe as alleged by pointing to inconsistencies between her statements and other evidence in the record.  For example, Plaintiff testified that she experienced side effects from her medication including profuse sweating, digestive issues and bouts of vertigo.  (*Id.* at 58.)  However, the objective medical record shows that Plaintiff repeatedly denied having any adverse effects of her medication during multiple medical appointments. (*Id.* at 444, 450, 487, 491, 496.)  Similarly, the record shows Plaintiff's testimony about her response to treatment is both internally inconsistent and contradicted by the medical record.  For example, in speaking about her back pain, Plaintiff stated that "nothing at the moment" makes her pain better, but later stated that pain medications bring down her pain to a moderate level. (*Id.* at 51, 53.)  The medical record also indicates that Plaintiff stated at multiple appointments that the medication provided her with adequate pain relief and made her functional. (*Id.* at 31, 426, 444, 487, 496, 505, 663.)  Therefore, the ALJ reasonably relied on Plaintiff's inconsistent statements to find that Plaintiff's testimony regarding the severity of her symptoms is not entirely credible. *Burch*, 400 F.3d at 680.

With regard to Plaintiff's daily activities, the ALJ properly found Plaintiff's testimony to be inconsistent with statements Plaintiff made regarding her daily activities.  Plaintiff testified that she could only stand or walk for about 10 minutes at a time due to her pain and fatigue.  (AR at 55.)  She also stated that she cannot sit for more than 10 to 15 minutes before being forced to get up and walk around for two to five minutes because

of lower back pain and numbness in her arms. (*Id.* at 51.) Plaintiff further testified that she cannot work because of chronic fatigue that forces her to lie down two to three times per day to try to nap. (*Id.* at 50.) Plaintiff also stated in a Functional Report that she has not been able to walk recreationally since June 2011. (*Id.* at 201.) However, the ALJ cited to a medical report from November 25, 2013, in which Plaintiff's "social history" indicated that she exercises by walking two and a half miles four times per week. (*Id.* at 680.) Plaintiff argues that such attempts to exercise were part of her cardiac rehabilitation program, and should therefore bolster her credibility. (Doc. 17 at 8.) "'[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' and [the Ninth Circuit] ha[s] held that '[o]nly if [her] level of activity were inconsistent with [her] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison*, 759 F.3d at 1016 (quoting *Reddick*, 157 F.3d at 722 (citations omitted)). In this case, walking for miles on a consistent basis is directly inconsistent with Plaintiff's alleged limitations, especially her claim that she cannot work because she cannot walk more than 10 minutes at a time and her chronic fatigue which forces her to lie down frequently throughout the day. Therefore, the ALJ properly weighed this fact in assessing Plaintiff's credibility.

However, the ALJ's reliance on specific statements made by Plaintiff about her daily activities in a Functional Report failed to meet the required level of specificity. With regard to Plaintiff's daily activities, the ALJ cited to a Functional Report (AR at 197–204), in which Plaintiff stated that she drives her kids to school, does laundry, pays bills, helps her children with their schoolwork, prepares meals, performs light cleaning, occasionally goes to the store alone, goes to medical appointments alone, and has no problems counting change. (*Id.*) On the other hand, Plaintiff also reported that she is unable to write for more than a few minutes or to spend more than a few minutes on the computer because her hands would go numb. (*Id.* at 197.) Additionally, Plaintiff stated that she relies on her children to assist her with cooking, putting away laundry, vacuuming, cleaning bathrooms, taking care of pets, carrying heavy groceries, and

sometimes getting off and on the toilet. (*Id.* at 197–201.) Therefore, unlike the ALJ's earlier discussion of the November 25, 2013 report, which identified specific facts in the record that conflicted with Plaintiff's testimony, the ALJ provided no connection between these activities and any particular symptom testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (rejecting ALJ's credibility determination where "the ALJ stated only—in passing . . . —that Claimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing"). Thus, this portion of the ALJ's reasoning is not supported by substantial evidence.

Overall, there is evidence that both detracts from and supports the ALJ's conclusion that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms are not entirely credible. As detailed above, the ALJ provided several clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's testimony. Therefore, despite some errors, the ALJ's determination is supported by substantial evidence and free of harmful error. *See Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is affirmed.

**IT IS FURTHER ORDERED** that Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 30th day of March, 2017.

Honorable John Z. Boyle
United States Magistrate Judge